## A03A0978. SMITH v. THE STATE.
### (581 SE2d 673)

ELDRIDGE, Judge.

A DeKalb County jury found Xavier Smith guilty as a party to the crime of armed robbery after the victim thereof identified Smith as one of two men who, just before closing time at 9:00 p.m., entered Mitchell's Formalwear in South DeKalb Mall with a handgun, ordered the victim to the rear of the store, and took $120 of the store's money that was lying on the counter in preparation for closing. Smith appeals, claiming the evidence was insufficient to support the verdict; that the trial court erred in refusing to secure a new jury panel for voir dire purposes since the panel saw Smith in handcuffs; and that he received ineffective assistance of counsel. As each of these contentions is without merit, we affirm Smith's conviction.

1. Smith's challenge to the sufficiency of the evidence fails. The victim's testimony, including an in-court identification of Smith as one of the two perpetrators of the armed robbery against him, established the essential elements of the indicted offense. "[S]o long as there is some competent evidence to support each element of the offenses as charged, the jury's verdict will be upheld."[1]

Further, we reject Smith's claim that, because he did not take the store's money from the counter until after he forced the victim into the backroom, "[a]t no point did [Smith] use a weapon to take money from the victim." A victim's "immediate presence" in the context of our armed robbery statute, OCGA § 16-8-41, extends "fairly far," and a robbery conviction is usually upheld as to a taking even out of the physical presence of the victim, if what was taken was ini-

---

[1] (Punctuation and footnote omitted.) *Harris v. State*, 254 Ga. App. 125, 126 (561 SE2d 467) (2002).

tially under the victim's control or his responsibility.[2] Here, the store's money was under the victim's control until Smith ordered the victim at gunpoint into the backroom so that Smith could take the money, which he did. Under these circumstances, a rational trier of fact could have found Smith guilty beyond a reasonable doubt of the offense of armed robbery.[3]

Under this same enumeration of error, Smith claims that the victim's testimony about the perpetrators' use of a handgun was "unbelievable." However, this argument addresses the credibility of a witness and, as such, provides nothing for this Court to review in a sufficiency of the evidence analysis.[4]

2. We likewise reject Smith's claim that the trial court erred in refusing to order a new jury panel for voir dire purposes because the original panel "saw appellant handcuffed to two other prisoners or simply handcuffed." The trial court voir dired the jury panel, asking if they had,

> observed anything during court this morning that would affect your ability to be fair and impartial if you are selected to serve as a member of this jury? . . . [D]id anything occur or did you overhear or observe anything innocently or inadvertently that would affect your ability to serve as a fair and impartial juror if you are selected to serve as a juror in this case?

Receiving no positive response from the jury panel, voir dire ensued. No further objection was made with regard to the trial court's corrective measures. Accordingly, any asserted error with respect to the jury panel is waived by Smith's acquiescence in the curative procedure implemented by the trial court.[5]

3. In his final claim of error, Smith contends he received ineffective assistance of counsel at trial because his trial attorney advised him to go forward with eleven jurors when one of the twelve jurors became ill, and Smith agreed to do so on this advice from counsel.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced the

---

[2] *Culver v. State*, 230 Ga. App. 224, 231 (6) (496 SE2d 292) (1998).

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] *Leggon v. State*, 249 Ga. App. 467, 468 (1) (549 SE2d 137) (2001) ("Conflicts in the evidence are a matter of credibility for the jury to resolve and play no part in this Court's analysis.").

[5] *Gardiner v. State*, 264 Ga. 329, 333 (3) (444 SE2d 300) (1994); *Carter v. State*, 192 Ga. App. 726, 728 (5) (386 SE2d 389) (1989).

defense. *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985) (citing *Strickland v. Washington*, 466 U. S. 668 [(104 SC 2052, 80 LE2d 674)] (1984)). . . . The inquiry focuses on the reasonableness of counsel's conduct from counsel's perspective at the time of trial. Thus, the courts will not second-guess counsel's decisions concerning matters of trial strategy and tactics.[6]

Here, trial counsel testified at the motion for new trial hearing that the State had failed to secure one or more possible witnesses, thereby hopefully weakening its otherwise strong case.[7] Counsel testified that the juror who fell ill was one whom he would have struck had it not been for his strike limitations; that such juror "was a clerk at Wendy's and would have been subject to perhaps being armed robbed, would have been sensitive to this case"; and that, because of this fact, he advised Smith to let the trial proceed without that juror since the State had a potentially weakened case and the excused juror was not helpful to Smith.

Under theses circumstances, we cannot find counsel's advice to Smith to be error. Such advice was fact-based and strategic, with the ultimate decision being made by Smith. "Decisions regarding which witnesses to call and all other trial strategies are the exclusive province of the attorney after consultation with his client."[8]

And informed strategic decisions do not amount to inadequacy under *Strickland*[, supra]. The fact that appellant and his present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant received representation amounting to ineffective assistance of counsel.[9]

Moreover, we conclude that Smith has failed to meet his burden of demonstrating prejudice arising from his trial attorney's strategic advice to proceed with 11 jurors. Smith's conclusory statement, "to allow eleven jurors to decide his fate harmed appellant," in no way shows that there is a reasonable probability that Smith would have been acquitted had a mistrial been declared and the same strong

---

[6] (Citations and punctuation omitted.) *Quintanilla v. State*, 273 Ga. 20, 21-22 (3) (537 SE2d 352) (2000).

[7] Apparently, a security guard at the mall and others who were involved in a "chase" were not present at trial to testify on behalf of the State.

[8] (Citation omitted.) *Parrish v. State*, 237 Ga. App. 274, 284 (10) (514 SE2d 458) (1999).

[9] (Citations and punctuation omitted.) *Cook v. State*, 274 Ga. 891, 897 (7) (561 SE2d 407) (2002).

State's evidence — or perhaps stronger with the inclusion of additional witnesses — been put before another panel of 12 jurors.[10]

Having failed to show either error or the resulting harm necessary to support a claim of ineffective assistance of counsel, Smith's last enumeration of error is without merit.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED APRIL 17, 2003.

*Maria Murcier-Ashley*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.

---

[10] *Head v. Carr*, 273 Ga. 613, 624 (4) (C) (2) (544 SE2d 409) (2001).